UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MORTGAGE FUND IVC TRUST 2016-RN5,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>DEWEY D. BROWN, *et al.*,<br><br>　　　　　　　　　　　　Defendants. | Case No. 2:17-cv-2309-KJD-BNW<br><br>**<u>ORDER</u>** |

  Before the Court are cross-motions for summary judgment filed by plaintiff Mortgage Fund IVC Trust (#36) and defendant Saticoy Bay, LLC Series 2175 Clearwater Lake (#37). Both parties have filed their respective responses and replies. None of the remaining defendants have filed a dispositive motion, nor have they joined Saticoy Bay's motion.

  Mortgage Fund IVC Trust ("the Trust") seeks a declaratory judgment that its deed of trust survived Sun City Anthem Community Association's nonjudicial foreclosure. Before the foreclosure, Sun City's agent, Red Rock Financial Services, assured the Trust's predecessor-in-interest that its deed of trust was superior to the association's lien. Believing its lien to be safe, the Trust did not tender the superpriority lien or attempt to protect its deed of trust from extinguishment. Sun City then sold the property to Saticoy Bay, LLC, who believes it took the property free from the Trust's deed of trust. The Trust now moves for summary judgment, arguing that Red Rock Financial's assurances that the Sun City lien was junior to the Trust's deed of trust demonstrate the association's intent to foreclose only on the sub-priority portion of its outstanding lien. If so, the foreclosure did not extinguish the existing deed of trust. Alternatively, the Trust argues that even if Sun City foreclosed on the superpriority portion of its lien, Red Rock Financial's assurances that the deed of trust was safe coupled with the grossly inadequate sales price of the property render the foreclosure fraudulent, unfair, or oppressive. As

a result, that sale should be equitably unwound.

Whether Sun City foreclosed on its sub-priority lien or its superpriority lien is unclear from the record. Nevada law is similarly unclear whether NRS § 116 permits an association to facilitate a sub-priority-only foreclosure where the superpriority lien has not been cured. Despite that uncertainty, Nevada law is clear is that the Court retains equitable authority to set aside a foreclosure sale where the association has misled a deed of trust holder that its deed of trust will survive the foreclosure. Such a direct misrepresentation rises to the level of fraud, unfairness, or oppression that justify equitably unwinding a foreclosure sale. That is what Sun City Anthem and its agent did here. Therefore, the Court grants the Trust's motion for summary judgment and sets aside Sun City Anthem's foreclosure sale.

## I. **Background**

The parties agree on the basic facts. In 2008, former owners Dewey and Lillian Brown purchased a piece of real property located at 2175 Clearwater Lake Drive in Las Vegas, Nevada. The Browns borrowed $316,680.00 from Countrywide Bank to finance the purchase. Countrywide secured its interest by recording a deed of trust against the property. Deed of Trust, ECF No. 36 Ex. A. After a series of assignments, Mortgage Fund IVC Trust became beneficiary under the deed of trust. Assignment of DOT, ECF No. 36 Ex. E.

The Clearwater Lake property was part of the Sun City Anthem Community Association and was subject to the association's Covenants, Conditions, and Restrictions ("CC&Rs"). The CC&Rs required the Browns to pay monthly assessments for shared maintenance and general community upkeep. The Browns fell behind on their assessments, which prompted Sun City Anthem to begin foreclosure proceedings. On March 15, 2013, Sun City Anthem, through its agent Red Rock Financial Services, recorded a Lien for Delinquent Assessments against the property. ECF No. 36 Ex. F. That notice identified a past-due balance of $15,577.57. Id. The Browns did not pay the past due balance, causing Red Rock Financial to record a Notice of Default and Election to Sell. ECF No. 36 Ex. G. Again, neither the Browns nor the Trust paid the outstanding balance, and Red Rock Financial recorded a Notice of Foreclosure Sale. ECF No. 36 Ex. H. Saticoy Bay purchased the home at the foreclosure sale for $45,100.00. Foreclosure Deed,

ECF No. 36 Ex. J.

Three months before the foreclosure sale, however, Red Rock Financial sent the Trust's predecessor-in-interest, Bayview Loan Servicing,[1] a courtesy letter to notify it of the pending foreclosure action and its attempt to collect the delinquent balances. That letter assured Bayview that "The Association's Lien for Delinquent Assessments *is Junior only to the Senior Lender/Mortgage Holder*." Red Rock Letter, ECF No. 36 Ex. I (emphasis added). At that time, Bayview was the "Senior Lender/Mortgage Holder" and believed its deed of trust to be safe. As a result, Bayview did not attempt to satisfy Sun City's outstanding lien, nor did it attempt to halt the association's foreclosure.

Saticoy Bay, meanwhile, purchased the Clearwater Lake property at auction and believed it to be free of the Trust's interest. The Trust then brought this suit, seeking a declaration that its deed of trust still encumbered the Clearwater Lake property. Compl., ECF No. 1. The parties performed discovery and filed their first round of dispositive motions, but the Court denied those motions, opting instead to stay the case pending the Nevada Supreme Court's clarification of NRS § 116.3116(2)'s notice requirements. Order Staying Case 2, ECF No. 33. The Court has since lifted the stay, and the parties have renewed their motions for summary judgment to which the Court now turns.

**II.     Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials by disposing of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). It is available only where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary judgment. First, the moving party must demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to]

---

[1] Bayview later assigned its interest to the Trust. See Assignment of DOT, ECF No. 36 Ex. E.

return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence and draws all available inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

Where parties have filed competing motions for summary judgment, the Court must review each motion on its own merits. Fair Housing Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). In reviewing each motion, the Court views the evidence and makes all available inference in favor non-moving party. See Kaiser Cement Corp., 793 F.2d at 1103. At bottom, a party does not prevail on summary judgment solely because the other party did not prevail. See Riverside Two, 249 F.3d at 1136.

### III. Analysis

Of the Trust's four causes of action, it seeks summary judgment only on its quiet title and declaratory relief claim against each defendant and its claim for injunctive relief against Saticoy Bay.[2] As an initial matter, the Trust's claim for preliminary or permanent injunctive relief is not itself a cause of action, but rather a remedy. See In re Wal-Mart Wage and Hour Emp. Pract. Litig., 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007). Accordingly, the Court dismisses that "claim."

The Trust's remaining quiet title and declaratory relief claim hinges on the effect of Red Rock Financial's assurance that the association's lien was junior to the Trust's existing deed of trust. The Trust argues that at best, Red Rock Financial's assurance was evidence that the association only intended to foreclose on its sub-priority lien, leaving the deed of trust unaffected. At worst, the assurance was a ploy that lulled the Trust into a false sense of security and allowed Saticoy Bay to extinguish the deed of trust without resistance.[3] Either way,

---

[2] The Trust's two remaining claims are judicial foreclosure against the original borrower and Republic Services and breach of contract against the borrower.

[3] The Trust also argues that the foreclosure is invalid because it relied upon an unconstitutional version of NRS § 116.3116 and because the FHA Insurance Program preempts NRS § 116. Neither argument is persuasive. The Nevada Supreme Court and Ninth Circuit now agree that NRS § 116.3116(2) is not facially unconstitutional. See Bank of America v. Arlington West Homeowners Ass'n, 920 F.3d 620, 624 (9th Cir. 2019); SFR Invs. Pool 1,

according to the Trust, Sun City did not extinguish the existing deed of trust. Saticoy Bay counters that the Trust's claims are barred by a three-year statute of limitations. And even if the claims were timely, they fail because the association could not elect to foreclose only on its sub-priority lien and that there is no evidence of fraud, oppression, or unfairness that allows the Court to equitably set aside the sale.

**A. The Trust's Claims are Timely**

Saticoy Bay argues that the Trust's quiet title claim is untimely because NRS § 11.190(3) imposes a three-year statute of limitations, and the Trust waited nearly four years to file its complaint. Although this district is split on the applicable statute of limitations for this type of quiet title and declaratory relief claim, no court has imposed a three-year statute of limitations. The split is between a four-year and five-year statute of limitations.[4] The disagreement boils down to whether these quiet title claims are "founded upon the title to real property" under NRS § 11.070 or an attempt to recover property under NRS § 11.080. If so, the five-year limitations period applies. If §§ 11.070 & 11.080 do not apply, the Court is left with NRS § 11.220's four-year catch-all period for actions not covered by the other limitations provisions.

Both the Nevada Supreme Court and Ninth Circuit have suggested that a five-year statute of limitations applies. See Weeping Hollow Ave. Tr. v. Spencer, 831 F.3d 1110, 1114 (9th Cir. 2016) (citing NRS § 11.070) ("[u]nder Nevada law, [homeowner] could have brought claims challenging the HOA foreclosure sale within five years of the sale"); Las Vegas Dev. Grp., LLC v. Blaha, 416 P.3d 233, 237 (Nev. 2018) (a claim "seeking to quiet title . . . is governed by NRS 11.080, which provides for a five-year statute of limitations"). This Court agrees that NRS §§

---

LLC v. Bank of New York Mellon, 422 P.3d 1248, 1252 (Nev. 2018). Likewise, the FHA insurance program does not preempt NRS § 116. Renfroe v. Lakeview Loan Servicing, LLC, 398 P.3d 904, 909 (Nev. 2017); Bank of America, N.A. v. Hollow De Oro Homeowners Ass'n, 307 F. Supp. 3d 1121, 1133 (D. Nev. 2018).

[4] Compare Bank of New York Mellon v. Khosh, No. 2:17-cv-0957-MMD-PAL, 2019 WL 2305146 (D. Nev. May 30, 2019) (applying five-year statute of limitations to quiet title claim under NRS § 11.070); Newlands Asset Holding Tr. v. SFR Invs. Pool 1, LLC, No 3:17-cv-0370-LRH-WGC, 2017 WL 5559956 (D. Nev. Nov. 17, 2017) (same); Nationstar Mortg., LLC v. Falls at Hidden Canyon Homeowners Ass'n, No. 2:15-cv-1287-RCJ-NJK (D. Nev. June 14, 2017) (same); HSBC Bank USA, N.A. v. Green Valley Pecos Homeowners Ass'n, Inc., No. 2:16-cv-0242-JCM-GWF, 2017 WL 937723 (D. Nev. Mar. 9, 2017) (same), with U.S. Bank v. SFR Invs. Pool 1, LLC, --- F. Supp. 3d ---, 2019 WL 1383265 (D. Nev. Mar. 27, 2019) (applying four-year catchall provision under NRS § 11.220); Nationstar Mortg., LLC v. Safari Homeowners Ass'n, No. 2:16-cv-0542-RFB-CWH, 2019 WL 121960 (D. Nev. Jan. 6, 2019) (same); Bank of America, N.A. v. Country Garden Owners Ass'n, No. 2:17-cv-1850-APG-CWH, 2018 WL 1336721 (D. Nev. Mar. 14, 2018).

11.070 and 11.080 impose a five-year limitations period on these claims. See Bank of New York Mellon v. Green Valley South Owners Ass'n, No. 2:17-cv-2024-KJD-EJY, 2019 WL 4393356 at *3–4 (D. Nev. Sep. 13, 2019). Regardless, the Trust's claims are timely under either the four- or five-year limitations period. Saticoy Bay recorded its Foreclosure Deed on June 18, 2014, and the Trust filed its complaint on September 1, 2017. Therefore, the Trust's quiet title and declaratory relief claim is timely.

### B. Red Rock Financial's Assurance that the Association's Lien was Junior to the Existing Deed of Trust Justify Setting Aside the Foreclosure Sale

Next, the Court moves to the merits of the Trust's motion. The Trust's argument turns on the effect of Red Rock Financial's assurances that the association's lien was junior to the existing deed of trust. The argument is two-fold. Either the association only intended to foreclose on the junior portion of its lien, or the association unfairly misrepresented the superpriority position of its lien to the Trust. In either scenario, the Trust argues that its interest is preserved. If the association only foreclosed on the sub-priority portion of its lien, Saticoy Bay took the property subject to the Trust's deed of trust. Or, if the association foreclosed on the superpriority portion of its lien, that foreclosure and sale was inequitable under Shadow Wood[5] and must be set aside. The Court will address the Trust's arguments in order.

Red Rock Financial's letter does not demonstrate that the association intended to foreclose solely on the sub-priority portion of its lien. Nevada law allows a homeowner association to record a lien for delinquent assessments and various collections costs and fees. That lien is split into two portions: a sub-priority piece and a superpriority piece. SFR Invs. Pool 1, LLC v. U.S. Bank, 334 P.3d 408, 411 (Nev. 2014). The superpriority portion consists of up to nine months of unpaid assessments and any nuisance and abatement fees. Id. citing NRS § 116.3116(2). That portion is prior to all existing interests, including a lender's first deed of trust. Id. The sub-priority piece, on the other hand, is not prior to the lender's first deed of trust, and consists of association's remaining fees and outstanding assessments. Id.

Proper foreclosure of the association's superpriority lien extinguishes a lender's deed of

---

[5] See Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp, Inc., 366 P.3d 1105 (Nev. 2016).

- 6 -

trust. It is unclear, however, if Nevada law allows an association to foreclose only on the sub-priority piece of its lien where the superpriority piece has not been satisfied. The Nevada Supreme Court has not addressed that question in a published opinion but has confronted a similar issue in two unpublished orders. See PennyMac Corp. v. SFR Invs. Pool 1, LLC, No. 73405, 2018 WL 4416312 (Nev. Sep. 14, 2018); U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC, No. 71414, 2018 WL 1448248 (Nev. Mar. 15, 2018). In both cases, the holder of the original deed of trust argued that a mortgagee protection clause in the association's CC&Rs was conclusive evidence that the association only foreclosed on the sub-priority portion of its lien. The Nevada Supreme Court rejected that argument. See PennyMac, 2018 WL 4416312 at *1 (NRS § 116.3116(7) "says nothing about an HOA choosing to foreclose on only the subpriority piece of its assessment lien when the superpriority piece has not been satisfied"); U.S. Bank, 2018 WL 1448248 at *1 ("even assuming an HOA can choose to conduct a subpriority-only foreclosure," a restrictive covenant is not evidence of such intent).

Admittedly, the Nevada Supreme Court's unpublished orders are not binding on these parties. However, where Nevada law is unclear, this Court generally predicts how the Nevada Supreme Court would decide the issue. See Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc., 306 F.3d 806, 812 (9th Cir. 2002). Here, the Court predicts that the Nevada Supreme Court would hold that NRS § 116.3116(2) (2013) would not allow an association to waive its superpriority lien in favor of a sub-priority-only foreclosure. See SFR Invs. Pool 1, LLC v. U.S. Bank, N.A., 334 P.3d 408, 419 (Nev. 2014) ("[n]othing in [NRS] 116.3116 expressly provides for a waiver of the HOA's right to a priority position for the HOA's super priority lien").

Even assuming that the association could conduct a sub-priority-only foreclosure, Red Rock Financial's letter is not evidence that the association intended to do so. The letter does not mention the superpriority or sub-priority pieces of the lien at all. It only notified the Trust's predecessor-in-interest that the association was attempting to collect past-due assessments and that it would foreclose if its lien was not cured. The statement, "[t]he Association's Lien for Delinquent Assessments is Junior only to the Senior Lender/Mortgage Holder" demonstrates a misunderstanding of the nature of the association's split lien more than it shows a desire to

foreclose on only half of that lien. Therefore, the letter is not sufficient evidence that the association only foreclosed on the sub-priority piece of its lien.

Nevertheless, Red Rock Financial's assurance that the Trust's deed of trust was senior to the association's lien is evidence of fraud, unfairness, or oppression that justify unwinding the foreclosure sale if the purchase price was grossly inadequate. In a pair of cases, the Nevada Supreme Court has clarified that the Court may exercise equitable authority to set aside an association's foreclosure sale where the sales price is grossly inadequate and there is evidence of fraud, unfairness, or oppression infecting the sale. First, the Court issued <u>Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp., Inc.</u>, 366 P.3d 1105 (Nev. 2016). <u>Shadow Wood</u> reaffirmed that NRS § 116.3116(2) (2013) created a split lien in favor of the homeowner association and that the foreclosure of the superpriority portion of that lien extinguishes a lender's first deed of trust. <u>Id.</u> at 1107. However, § 116's statutory scheme does not remove the Court's equitable power to unwind a foreclosure and sale when appropriate. <u>Id.</u> at 1110 ("History and basic rules of statutory interpretation confirm our view that courts retain the power to grant equitable relief from a defective foreclosure sale when appropriate"). Whether unwinding the sale is "appropriate" depends on two factors: a grossly inadequate sales price and evidence of fraud, unfairness, or oppression. Both factors must be present as sales price on its own is not enough to set aside a sale. Importantly, where there is fraud, unfairness, or oppression together with a grossly inadequate sales price, the Court may unwind the sale despite the conclusive nature of the foreclosure deed recitals. <u>Id.</u> at 1112 ("such recitals are 'conclusive, in the absence of grounds for equitable relief.'").

A year later, the Nevada Supreme Court issued <u>Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon</u>, 405 P.3d 641 (Nev. 2017) ("<u>Shadow Canyon</u>"). <u>Shadow Canyon</u> solidified <u>Shadow Wood</u>'s conclusion that a Court may set aside a foreclosure sale where there is fraud, unfairness, or oppression coupled with a grossly inadequate sales price. <u>Id.</u> at 642–43. The Court, however, refused to create a bright-line rule for what constitutes a grossly inadequate sales price. <u>Id.</u> at 649 ("we decline to adopt the Restatement's suggestion that a foreclosure sale for less than 20 percent of fair market value necessarily invalidates the sale").

Instead of adopting a bright-line test, Shadow Canyon encouraged lower courts to first determine whether there is evidence of fraud, unfairness, or oppression. If there is evidence of fraud, unfairness, or oppression, the Court should then consider whether the sales price was grossly inadequate. Although 20 percent is not grossly inadequate per se, it is a good starting point in analyzing the sufficiency of sales price.

Shadow Canyon also provided a non-exhaustive list of irregularities that may rise to the level of fraud, unfairness, or oppression to set aside the foreclosure and sale. Id. at 648 n.11. Relevant here, the Court determined "an HOA's representation that the foreclosure sale will not extinguish the first deed of trust" may justify unwinding the sale. Id. This Court agrees that an association's misrepresentation of the safety of a lender's deed of trust is evidence of unfairness that justifies unwinding the sale. See Zyzzx2 v. Dizon, No. 2:13-cv-1307-JCM-PAL, 2016 WL 1181666 (D. Nev. Mar. 25, 2016) (setting aside foreclosure sale after a homeowner association represented to the lender that the association's foreclosure would not extinguish the first deed of trust).[6]

Sun City Anthem, through its agent Red Rock Financial, misrepresented the safety of the Trust's deed of trust in its pre-foreclosure letter. It stated, "The Association's Lien for Delinquent Assessments is Junior only to the Senior Lender/Mortgage Holder." Red Rock Letter, ECF No. 36 Ex. I. After receiving that assurance, the Trust's predecessor-in-interest had no reason to attempt to tender payment of the superpriority balance or to attempt to halt the association's foreclosure. The association represented that any potential buyer would take its interest in the property subject to the Trust's. There is nothing else in the letter that would warn the Trust otherwise. Under Shadow Canyon, such misrepresentations rise to the level of fraud, unfairness, or oppression that may justify setting aside the association's sale.

Having found evidence of fraud, unfairness, or oppression, the only remaining question is whether the sales price was grossly inadequate. It was. Although the Nevada Supreme Court has

---

[6] The Nevada Supreme Court has similarly upheld summary judgment where Red Rock Financial assured a deed of trust holder that the association's lien was junior to the existing deed of trust. See San Florentine Ave. Tr. v. JP Morgan Mortg. Acquisition Corp., No. 73684, 2018 WL 4697260 at *1 (Nev. Sep. 28, 2018) (unpublished). The Court also rejected the buyer's argument that its putative bona fide purchaser status prevented the Court from granting such equitable relief. Id.

- 9 -

rejected the Restatement's view that a sales price less than 20 percent of the fair market value is conclusive evidence of fraud, unfairness, or oppression, the 20 percent benchmark is a good starting point. Here, the sales price did not reach even 20 percent of the fair market value. At the time of the foreclosure, the value of the property was $380,000. See Appraisal Report 5, ECF No. 36 Ex. K. Saticoy Bay purchased the property for $45,100. Foreclosure Deed, ECF No. 36 Ex. J. That equates to 12 percent of the fair market value and is grossly inadequate.

At bottom, the Court finds that the sales price of property at 12 percent of the fair market value was grossly inadequate. The sales price coupled with Red Rock Financial's assurance that the Trust's deed of trust was senior to the association's lien is sufficient evidence of fraud, unfairness, or oppression to set aside the association's foreclosure and sale. Therefore, the Court grants the Trust's motion for summary judgment and finds that its deed of trust still encumbers the property.

**IV.     Conclusion**

Accordingly, IT IS HEREBY ORDERED that plaintiff Mortgage Fund IVC Trust's motion for summary judgment (#36) is **GRANTED**. The Court sets aside Sun City Anthem Community Association's nonjudicial foreclosure. As a result, Mortgage Fund IVC Trust's deed of trust continues to encumber the property located at 2175 Clearwater Lake Drive in Las Vegas, Nevada.

The Clerk of the Court shall **ENTER JUDGMENT** in favor of Mortgage Fund IVC Trust and against each defendant on its quiet title and declaratory relief claim.

IT IS FURTHER ORDERED that defendant Saticoy Bay LLC's motion for summary judgment (#37) is **DENIED**.

Dated this 24th day of September, 2019.

_____
Kent J. Dawson
United States District Judge